UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DONEALE FEAZELL,<br><br>                Petitioner,<br>    v.<br>RENEE BAKER, *et al.*,<br><br>                Respondents. | Case No. 3:16-cv-00313-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

This counseled amended habeas petition pursuant to 28 U.S.C. § 2254 comes before the Court on Respondents' motion to dismiss (ECF No. 42). Petitioner has opposed (ECF No. 58), and Respondents have replied (ECF No. 61). For the reasons discussed herein, the Court will grant Respondents' motion.

**II.    RELEVANT BACKGROUND**

Petitioner Doneale Feazell challenges his state court conviction of one count of attempted robbery with the use of a deadly weapon and one count of murder with the use of deadly weapon. (ECF No. 35 at 1-2.) Petitioner was found guilty on both counts following an eleven-day jury trial in 1994; the same jury then sentenced him to death. (*See* ECF Nos. 43-21, 43-22, 43-23, 43-24, 43-25, 43-26, 43-27, 43-28, 43-29, 43-30, 43-31, 43-32, 43-33, 43-34, 43-35, 44, 44-1, 44-2 (Exs. 21-38).) Although the judgment was affirmed on direct appeal, the Nevada Supreme Court vacated the sentence on postconviction review, remanding for a new penalty hearing. (ECF Nos. 44, 44-16, 46-9 (Exs. 36, 52, 117).)

///

1    Following a second penalty hearing, after which the jury hopelessly deadlocked, the trial court sentenced Petitioner to life without the possibility of parole. (ECF Nos. 48, 48-1, 48-2, 48-3, 48-4, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-12 (Exs. 180-92).) Amended judgment of conviction was entered on March 18, 2009. /ECF No. 48-12 (Ex. 192).) Petitioner appealed. (ECF No. 48-13 (Ex. 193).) The Nevada Supreme Court affirmed the amended judgment of conviction on September 9, 2010, and remittitur issued on October 4, 2010. (ECF No. 48-34 (Ex. 214).)

During the second penalty hearing proceedings and on appeal thereof, Petitioner was represented by Patricia Erickson. (*See, e.g.*, ECF No. 49-2 (Ex. 218) at 5.) Exactly one year after the issuance of remittitur, on October 4, 2011, Erickson filed a state postconviction petition for habeas relief on Petitioner's behalf, arguing she herself had been ineffective during the second penalty proceedings. (*Id.*) Shortly thereafter, she moved for leave to withdraw and for appointment of new counsel on Petitioner's behalf. (ECF No. 49-3 (Ex. 219).) Following appointment of new counsel and further proceedings on the second state habeas petition, the trial court denied relief and the Nevada Supreme Court affirmed. (ECF Nos. 50-6, 50-17 (Exs. 253, 264).) Remittitur issued on February 9, 2016. (ECF No. 50-18 (Ex. 265).)

Thereafter, on or about June 2, 2016, Petitioner filed a federal *pro se* petition for writ of habeas corpus relief in this court. (ECF No. 1-1 at 1.) The Court appointed counsel, and after several extensions of time and appointment of substitute counsel, current counsel filed the operative amended petition for habeas corpus relief on September 4, 2018. (ECF No. 35.) Respondents now move to dismiss the amended petition as, among other things, untimely.

**III.    STANDARD**

The one-year limitation period for § 2254 petitions generally begins to run after the date on which the judgment challenged became final by the conclusion of direct review or the expiration of the time for seeking such direct review, unless it is otherwise tolled or
///

2

subject to delayed accrual.[1] 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2). Neither a properly filed federal habeas petition nor an untimely state habeas petition tolls the limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (holding that an untimely state habeas petition is not "properly filed" and thus does not toll the limitation period); *Duncan v. Walker*, 533 U.S. 167, 172 (2001) (holding that "a properly filed federal habeas petition does not toll the limitation period").

The statute of limitations can be equitably tolled in some circumstances. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately bears the burden of proof on this "extraordinary exclusion." *Miranda*, 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g.*, *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Ariz. Att'y Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007).

The Ninth Circuit has "adopted the 'stop clock' approach to analyzing claims for equitable tolling," in which "the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise

///

---

[1]The statute of limitations may also begin to run from other events, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), but Petitioner does not claim that any of those provisions applies in his case.

3

reasonable diligence, whichever occurs earlier." *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015) (citing *Gibbs v. Legrand*, 767 F.3d 879, 891-92 (9th Cir. 2014)).

## IV. DISCUSSION

As Petitioner did not file a petition for writ of certiorari with the United States Supreme Court, his conviction became final when the time for doing so expired, or on December 8, 2010. The statute of limitations began to run the following day. The parties agree that the statute of limitations was tolled while Petitioner's second state postconviction habeas petition was pending, from October 4, 2011, until February 9, 2016. Before the petition was filed and began tolling the statute of limitations, 300 days elapsed. Accordingly, absent tolling or other delayed accrual, the statute expired 65 days after it began to run again, or on April 14, 2016. The instant petition, filed on June 2, 2016, is therefore untimely on its face.

Petitioner does not dispute that the petition is untimely but asserts that he is entitled to equitable tolling due to the actions of his appointed attorney in failing to keep him apprised of the status of his case. This is the sole basis for equitable tolling Petitioner asserts.

A "'garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651-52 (internal citations omitted). However, serious instances of attorney misconduct, including complete abandonment, can justify equitable tolling if it is "extraordinary." *Id.* at 652. "Failure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings and the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment." *Gibbs*, 767 F.3d at 886; *see also Maples v. Thomas*, 565 U.S. 266, 283 (2012).

Petitioner asserts that Erickson, who represented him on appeal of the amended judgment of conviction, did not keep him apprised of the status of his case following direct appeal and thus "constructively abandoned" him. (ECF No. 58 at 9.) Petitioner asserts

4

that nothing in the record shows he was notified of the decision on his direct appeal and counsel's abandonment is demonstrated by the fact that she filed a state habeas petition alleging her own ineffectiveness on the very last day to do so. Petitioner argues that the only reason counsel would have filed a petition alleging her own ineffectiveness on the last day of the limitations period was because she realized she had dropped the ball and needed to do something to protect Petitioner's rights.

Petitioner's argument that counsel constructively abandoned him relies on unsupported allegations and speculation. First, Petitioner provides no evidence, not even his own declaration, that he was not advised of the decision on his direct appeal. His suggestion that the record must affirmatively show that he knew of the decision is without merit. It is the *petitioner's* burden to show that he is entitled to equitable tolling. *Miranda*, 292 F.3d at 1065. Second, the Court is not persuaded that counsel's filing of a habeas petition on the last day for doing so shows she abandoned petitioner. Quite to the contrary—it shows that counsel did not abandon Petitioner, as she took actions to protect his rights. At most, counsel's failure to file the state petition any earlier was no more than garden-variety attorney neglect—if that—and such does not support an application of equitable tolling. Petitioner makes no other allegations, supported by evidence or not, that counsel abandoned him, and thus has not shown an extraordinary circumstance stood in the way of his timely filing his federal habeas petition.

More importantly, however, and even assuming counsel's actions could be interpreted as constructive abandonment, Petitioner has utterly failed to show that he was diligent. Petitioner does not even argue, much less attempt to prove, that he attempted to discern the status of his case or to have counsel file a state petition on his behalf much earlier than was done while any extraordinary impediment stood in his way. On this basis alone, Petitioner's claim of equitable tolling fails.

In his opposition, Petitioner also makes a passing reference to the fact he has consistently asserted he is "factually innocent." In an abundance of caution, the Court considers whether Petitioner has shown actual innocence as a means of avoiding the

application of the time bar, despite the fact Petitioner failed to adequately raise this argument or support it in any way.

Demonstrating actual innocence is a narrow "gateway" through which a petitioner can obtain federal court consideration of habeas claims that are otherwise procedurally barred, including claims filed after the expiration of the federal limitations period. *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc) (A "credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits."); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "[T]enable actual-innocence gateway pleas are rare.'" *McQuiggen*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). To satisfy the narrow *Schlup* standard, a petitioner must come forward with new, reliable evidence that was not presented at trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. The evidence need not be newly discovered, but it must be "newly presented." *See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003).

Review of the record in state court indicates that Petitioner asserted a claim of actual innocence based on an alibi—five family members who would have testified that Petitioner was at his aunt, uncle and cousin's house at the time of the event in question.[2]

---

[2]Although Petitioner's state supplemental brief cites to statements from five family members (ECF No. 49-22 (Ex. 238)), the Court is unable to locate those statements in the record. The record does contain a report from an investigator summarizing the statements of three of the five family members. (ECF No. 49-28 (Ex. 239F) at 134-38.) The Court accepts that there is evidence to support statements from the other two family members, all of which are mostly consistent, for purposes of considering Petitioner's claim of actual innocence.

To assess whether it is more likely than not that no reasonable juror could have found Petitioner guilty beyond a reasonable doubt in light of this evidence, the Court must consider all the other evidence that was presented at trial.

At trial, undisputed evidence established that Derrick Hamilton had left a party with his girlfriend Tira Miller at around 4:30 a.m. on December 19, 1992, when a van pulled up behind their car, blocking their exit. (ECF No. 43-28 (Ex. 28) at 49-50 (Tr. 45-46).) A person who was very light skinned walked up to Hamilton's window, pointed a gun, said, "[T]his is a jack. Don't move," and then shot Hamilton, who died a short time later. (*Id.* at 63-64 (Tr. 59-60).) Miller identified Petitioner as the shooter with certainty; she stated she had seen Petitioner around a "couple . . . maybe four times," in school or at the corner liquor store, although the estimated number of times ranged from once to six or seven depending on when and to whom she gave a statement. (*Id.* at 66-68, 131, 135 (Tr. 62-64, 127, 131).) One witness who both interacted with the shooter before the shooting and witnessed the shooting agreed that the shooter had very light skin but was unable to identify Petitioner as the shooter. (ECF No. 43-26 (Ex. 26) at 93-94, 98 (Tr. 86-87, 91).) Another witness saw someone standing next to Hamilton's car window before the shooting and, while agreeing that the person had very light skin, testified that Petitioner was not that person. (ECF No. 43-30 (Ex. 30) at 99-100, 110, 123, 144 (Tr. 95-96, 106, 119, 140).)

Evidence was also presented that Petitioner was co-owner of the van. He and the other owner, Calvin Humphreys, had been given only one key and that key was in the possession of Humphreys. (ECF No. 43-26 (Ex. 26) at 152-53, 162-63 (Tr. 145-46, 155-56).) The van was taken from Humphrey's house without his knowledge the evening before the murder. (*Id.* at 161-62 (Tr. 154-55).) At the time it was taken, the ignition was intact. (*Id.* at 175 (Tr. 168).) When the van was recovered after the shooting, the ignition had been tampered with. (*Id.* at 156 (Tr. 149).)

Although limited physical evidence was recovered from the victim and at the scene, none of it tied Petitioner to the crime. Thus, the evidence against Petitioner amounted

primarily to his matching the general physical description of the shooter given by at least three people, being positively identified as the shooter by one of those persons, who was familiar with him, and being the co-owner of the van used to perpetrate the crime.

In his state postconviction proceedings, Petitioner asserted he was actually innocent based on the statements of five family members would have testified that at the time of the murder—that Petitioner had been at his aunt and uncle's house, watching movies with his cousin. (*See* ECF No. 49-22 (Ex. 238) at 21-24; ECF No. 49-28 (Ex. 239F) at 134-38.) Considering this evidence in light of the other evidence at trial, the Court cannot conclude it is more likely than not that no reasonable juror would have voted to convict Petitioner. Not only did Petitioner own the van used to perpetrate the crime, he fit the general physical description of the shooter given by three unrelated persons and was identified "without question" as the shooter by the person closest to the event, Tira Miller. (ECF No. 43-29 (Ex. 29) at 104 (Tr. 98).) While a defense witness disputed that Petitioner was the shooter, there were certainly reasons given for the jury to discount his testimony, including the fact that he did not immediately tell the police anything about his observations and only told anyone about his observations after both he and Petitioner had been in jail together, in the same module. In light of this evidence, the Court cannot conclude that no reasonable juror would have voted to convict Petitioner in light of the alibi evidence, and thus Petitioner has not established a gateway claim of actual innocence in order to avoid the time bar.

Accordingly, as the original petition was untimely filed, and Petitioner has established no basis for equitable tolling or for avoidance of the time bar, the Petition must be dismissed with prejudice as time-barred.

## V. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, Petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial

showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability and determines that none meet that standard. The Court will therefore deny Petitioner a certificate of appealability.

## VI. CONCLUSION

It is therefore ordered that Respondents' motion to dismiss the Petition as untimely (ECF No. 42) is granted, and the Petition in this action is dismissed with prejudice.

It is further ordered that Petitioner is denied a certificate of appealability, for the reasons discussed herein.

The Clerk of Court is instructed to enter final judgment accordingly and close this case.

DATED THIS 17th day of July 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE