UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DONEALE FEAZELL,<br><br>              Petitioner,<br>v.<br><br>RENEE BAKER, *et al.*,<br><br>              Respondents. | Case No. 3:16-cv-00313-MMD-CLB<br><br>ORDER |

This closed habeas matter is before the Court on Petitioner Doneale Feazell's *pro se* motion for relief from final judgment ("Motion") (ECF No. 68). Respondents did not respond to this Motion and the deadline to do so expired without request for extension. For the reasons discussed below, Feazell's Motion is denied.

**I.     BACKGROUND**

Feazell initiated this federal habeas corpus proceeding *pro se* in June 2016, challenging his state court conviction of one count of attempted robbery with the use of a deadly weapon and one count of murder with the use of deadly weapon.[1] (ECF No. 1.) The Court appointed counsel and directed service of his *pro se* petition. (ECF Nos. 9, 23.)

**A.     The Dismissal Order**

In September 2018, Feazell filed a counseled first amended petition (ECF No. 35). Respondents moved to dismiss the amended petition as untimely, among other things. (ECF No. 42.) Feazell did not dispute that his amended petition was untimely but asserted an entitlement to equitable tolling based on his appellate counsel's failure to keep him apprised of the status of his case. (ECF No. 58.)

---

[1] The details of Feazell's criminal conviction and state post-conviction proceedings are described fully in the Court's dismissal order (ECF No. 63), entered July 17, 2019.

This Court found that Feazell's argument that appellate counsel constructively abandoned him relied on unsupported allegations and speculation. (ECF No. 63 at 5.) Additionally, the Court determined that Feazell "utterly failed to show that he was diligent":

> Petitioner does not even argue, much less attempt to prove, that he attempted to discern the status of his case or to have counsel file a state petition on his behalf much earlier than was done while any extraordinary impediment stood in his way. On this basis alone, Petitioner's claim of equitable tolling fails.

(*Id.*)

Although he failed to adequately raise or support this argument, in an abundance of caution, the Court also addressed Feazell's contention that he is factually innocent:

> Review of the record in state court indicates that Petitioner asserted a claim of actual innocence based on an alibi—five family members who would have testified that Petitioner was at his aunt, uncle and cousin's house at the time of the event in question. To assess whether it is more likely than not that no reasonable juror could have found Petitioner guilty beyond a reasonable doubt in light of this evidence, the Court must consider all the other evidence that was presented at trial.
> At trial, undisputed evidence established that Derrick Hamilton had left a party with his girlfriend Tira Miller at around 4:30 a.m. on December 19, 1992, when a van pulled up behind their car, blocking their exit. (ECF No. 43-28 (Ex. 28) at 49-50 (Tr. 45-46).) A person who was very light skinned walked up to Hamilton's window, pointed a gun, said, "[T]his is a jack. Don't move," and then shot Hamilton, who died a short time later. (*Id.* at 63-64 (Tr. 59-60).) Miller identified Petitioner as the shooter with certainty; she stated she had seen [him] around a "couple . . . maybe four times," in school or at the corner liquor store, although the estimated number of times ranged from once to six or seven depending on when and to whom she gave a statement. (*Id.* at 66-68, 131, 135 (Tr. 62-64, 127, 131).) One witness who both interacted with the shooter before the shooting and witnessed the shooting agreed that the shooter had very light skin but was unable to identify Petitioner as the shooter. (ECF No. 43-26 (Ex. 26) at 93-94, 98 (Tr. 86-87, 91).) Another witness saw someone standing next to Hamilton's car window before the shooting and, while agreeing that the person had very light skin, testified that Petitioner was not that person. (ECF No. 43-30 (Ex. 30) at 99-100, 110, 123, 144 (Tr. 95-96, 106, 119, 140).)
> Evidence was also presented that Petitioner was co-owner of the van. He and the other owner, Calvin Humphreys, had been given only one key and that key was in the possession of Humphreys. (ECF No. 43-26 (Ex. 26) at 152-53, 162-63 (Tr. 145-46, 155-56).) The van was taken from Humphrey's house without his knowledge the evening before the murder. (*Id.* at 161-62 (Tr. 154-55).) At the time it was taken, the ignition was intact. (*Id.* at 175 (Tr. 168).) When the van was recovered after the shooting, the ignition had been tampered with. (*Id.* at 156 (Tr. 149).)
> Although limited physical evidence was recovered from the victim and at the scene, none of it tied Petitioner to the crime. Thus, the evidence against Petitioner amounted primarily to his matching the general physical description of the shooter given by at least three people, being positively

> identified as the shooter by one of those persons, who was familiar with him, and being the co-owner of the van used to perpetrate the crime.
> In his state postconviction proceedings, Petitioner asserted he was actually innocent based on the statements of five family members would have testified that at the time of the murder—Petitioner had been at his aunt and uncle's house, watching movies with his cousin. (*See* ECF No. 49-22 (Ex. 238) at 21-24; ECF No. 49-28 (Ex. 239F) at 134-38.) Considering this evidence in light of the other evidence at trial, the Court cannot conclude it is more likely than not that no reasonable juror would have voted to convict Petitioner. Not only did Petitioner own the van used to perpetrate the crime, he fit the general physical description of the shooter given by three unrelated persons and was identified "without question" as the shooter by the person closest to the event, Tira Miller. (ECF No. 43-29 (Ex. 29) at 104 (Tr. 98).) While a defense witness disputed that Petitioner was the shooter, there were certainly reasons given for the jury to discount his testimony, including the fact that he did not immediately tell the police anything about his observations and only told anyone about his observations after both he and Petitioner had been in jail together, in the same module. In light of this evidence, the Court cannot conclude that no reasonable juror would have voted to convict Petitioner in light of the alibi evidence, and thus Petitioner has not established a gateway claim of actual innocence in order to avoid the time bar.

(*Id.* at 6-8.) Because Feazell's original petition was untimely filed, and he failed to establish a basis for equitable tolling or for avoidance of the time bar, the Court dismissed the amended petition with prejudice as time-barred. (*Id.* at 9.) The Court further considered and denied issuance of a certificate of appealability. (*Id.*) Judgment was entered the same day as the dismissal order on July 17, 2019. (ECF No. 64.)

**B.    Application for Certificate of Appealability to the Ninth Circuit**

On August 5, 2019, federal habeas counsel, David Neidert, filed a notice of appeal with Court of Appeals for the Ninth Circuit. (ECF No. 65; *see also Feazell v. Baker*, Case No. 19-165535.[2]) The following month, Neidert filed an application for certificate of appealability asserting that this Court erred in dismissing Feazell's case as untimely. The Ninth Circuit denied a certificate of appealability on March 6, 2020. (ECF No. 67.)

///

///

///

---

[2]This Court takes judicial notice of the proceedings in Feazell's appeal before the Ninth Circuit. The docket records of the Ninth Circuit may be accessed by the public online at: www.pacer.gov.

### C. The Current Motion

Feazell filed the Motion on July 17, 2020, seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure.[3] (ECF No. 68.) The Motion challenges this Court's order as to a certificate of appealability and seeks leave to file an appeal. (*Id.* at 4.) Feazell claims he can establish "extraordinary circumstances" to justify relief from the judgment based on attorney abandonment by Neidert. He asserts that Neidert failed to adequately communicate with him and filed the amended petition and other documents without giving him the opportunity to first review the filings. Consequently, Feazell contends that Neidert did not include a sufficient explanation to avoid the time-bar. In particular, he states he can show diligence because he filed his original petition at the "first opportunity" with inmate assistance. (*Id.* at 6.) He further argues that Neidert abandoned him after the dismissal order was entered by failing to answer his correspondence and thus "denying him his right to an appeal within a 30 day [*sic*] time frame." (*Id.* at 4.) In addition, with regard to his actual innocence claim, Feazell contends that this Court (i) should have allowed him to develop facts regarding his alibi witnesses and conducted an evidentiary hearing, and (ii) failed to consider trial counsel's ineffective assistance. (*Id.* at 3, 6-7.)

## II. DISCUSSION

### A. Governing Law

Federal Rule of Civil Procedure 60(b) provides for relief from judgment for a list of enumerated reasons. "In the habeas context, Rule 60(b) applies to the extent that it is not inconsistent with the Anti-Terrorism and Effective Death Penalty Act ('AEDPA')." *Hall v. Haws*, 861 F.3d 977, 984 (9th Cir. 2017) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005)). "Rule 60(b)(6) permits reopening for 'any . . . reason that justifies relief' other than the more specific reasons set out in Rule 60(b)(1)-(5)." *Wood v. Ryan*, 759 F.3d 1117, 1119-20 (9th Cir. 2014). Under Rule 60(b)(6), "extraordinary circumstances" are required to justify the reopening of a final judgment. *Gonzalez*, 545 U.S. at 535; *Riley v.*

---

[3] All references to a "Rule" or "Rules" in this order refer to the Federal Rules of Civil Procedure.

4

*Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019). However, "[s]uch circumstances 'rarely occur in the habeas context'." *Wood*, 759 F.3d at 1120 (quoting *Gonzalez*, 545 U.S. at 535); *Hall*, 861 F.3d at 984 (noting that "AEDPA poses significant hurdles for a Rule 60(b) petitioner").

"A Rule 60(b) motion is proper when it 'attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings'." *Wood*, 759 F.3d at 1120 (quoting *Gonzalez*, 545 U.S. at 532). However, a Rule 60(b) motion "constitutes a second or successive petition if it 'seek[s] leave to present newly discovered evidence in support of a claim previously denied'." *Id.* (quoting *Gonzalez*, 545 U.S. at 531). When the substance of a petitioner's claim was "previously decided on the merits, and a Rule 60(b) motion that seeks leave to develop new evidence as to the claim" the court must deny the motion "as an unauthorized second or successive petition." *Id.* (citing *Gonzalez*, 545 U.S. at 531). Federal district courts lack jurisdiction to consider an unauthorized second or successive petition. 28 U.S.C. § 2244(b)(3) (requiring habeas petitioners to seek an order from the court of appeals authorizing the federal district court to consider a second or successive petition before such petition is filed); *see also Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (determining that district court lacked jurisdiction to consider second or successive habeas application); *Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005) ("all that matters is [whether petitioner] is seeking vindication of or advancing a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." (internal alterations and quotation marks omitted)).

The Ninth Circuit has held that "gross negligence by counsel amounting to 'virtual abandonment' can be an 'extraordinary circumstance' " justifying relief under Rule 60(b)(6). *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012) (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169-71 (9th Cir. 2002) (internal alterations marks omitted)). "A federal habeas petitioner—who as such does not have a Sixth Amendment right to counsel—is ordinarily bound by his attorney's negligence, because the attorney

and the client have an agency relationship under which the principal is bound by the actions of the agent." *Id.* at 1253 (citation omitted).[4] "However, when a federal habeas petitioner has been inexcusably and grossly neglected by his counsel in a manner amounting to attorney abandonment in every meaningful sense that has jeopardized the petitioner's appellate rights, a district court may grant relief pursuant to Rule 60(b)(6)." *Id.* at 1253 (citing *Maples v. Thomas*, 565 U.S. 266, 283 (2012); *Tani*, 282 F.3d at 1170).

### B. Feazell Fails to Meet the Rule 60(b) Standard

Feazell has not demonstrated that extraordinary circumstances warrant relief from judgment in this case. To support his attorney abandonment claim, Feazell attached unauthenticated copies of three letters to Neidert, dated in January and February 2020, and an inmate request form indicating that Feazell had not received legal mail from Neidert since April 2019. (ECF No. 68 at 8-11.) He asks the Court to find abandonment because he consistently reached out to Neidert between June 2019 and January 2020 but never heard back and learned of the dismissal order through research in the prison law library.

It is unclear from the Motion what attorney/client communication, if any, occurred to notify Feazell of the dismissal order or discuss potential next steps.[5] However, even if the assertions of poor communication are correct, the record shows that Feazell was not deprived of a meaningful opportunity to challenge the Court's dismissal order. Neidert timely filed a notice of appeal on Feazell's behalf. (ECF No. 65.) Neidert then requested

---

[4] *See also Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("Attorney ignorance or inadvertence is not 'cause' [for excusing procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error'." (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[5] The Court reminds counsel that, under Rule 1.4 of the Nevada Rules of Professional Conduct, every attorney licensed to practice in Nevada has a duty of communication with their client. That includes keeping the client reasonably informed about the status of the matter, promptly complying with reasonable requests for information, and explaining issues to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Attorneys admitted to practice in the District of Nevada must adhere to the standards of conduct prescribed by the Nevada Rules of Professional Conduct. LR IA 11-7(a).

a certificate of appealability from the Ninth Circuit alleging this Court erred by dismissing Feazell's case as untimely. The Ninth Circuit denied a certificate of appealability in March 2020. (ECF No. 67.) Given Neidert's timely pursuit of a certificate of appealability, the Court finds that Feazell's appellate rights were not jeopardized and Neidert did not abandon Feazell. *Cf. Foley v. Biter*, 793 F.3d 998, 1003 (9th Cir. 2015) (finding abandonment where counsel failed to inform Foley at any time his petition was denied or take any measures to preserve his appellate rights and opportunities).

More importantly, Feazell's arguments plainly show an attempt to attack the substance of this Court's dismissal order, rather than a defect in the integrity of these proceedings—thus, his Motion constitutes a second or successive petition. *See Gonzalez*, 545 U.S. at 532 n.5 (observing that a habeas petitioner's Rule 60 motion "based on the movant's own conduct, or his habeas counsel's omissions, ... ordinarily does not go to the integrity of the proceedings," and thus is subject to the bar on second or successive habeas petitions). For example, Feazell contends that Neidert did not include a sufficient explanation or reasons to avoid the time-bar in opposition to Respondents' dismissal motion. In essence, he asks the Court for a do-over by arguing, if he is allowed to appeal, he can fix Neidert's deficiencies and show "relentless diligence." (ECF No. 68 at 6.) He also asserts the Court should have allowed him to develop the facts regarding his alibi witnesses and conduct an evidentiary hearing before reviewing his actual innocence claim. These assertions squarely challenge the substance of the dismissal order and lack of evidentiary development. *See Wood*, 759 F.3d at 1120-21 (rejecting petitioner's contention that he was not challenging the substance of the district court's ruling, but instead challenging the denial of evidentiary development designed to substantiate that claim). Accordingly, the Court must deny the Motion as an unauthorized second or successive petition for which it lacks jurisdiction.

///

///

///

**III.    CONCLUSION**

It is therefore ordered that Petitioner Doneale Feazell's motion for relief from final judgment (ECF No. 68) is denied.

DATED THIS 9th day of October 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE